UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DENZEL SIMMONS,

               Petitioner,            Case No. 2:16-cv-126

v.                                    Honorable Gordon J.  Quist

DANIEL LESATZ,

               Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Denzel Simmons is incarcerated with the Michigan Department of Corrections at the Baraga Correctional Facility (AMF) in Baraga County, Michigan.  On April 11, 2013, following a four-day jury trial in the Wayne County Circuit Court, Petitioner was convicted of assault with intent to murder (AWIM), in violation of Mich. Comp. Laws § 750.83, assault with intent to do great bodily harm (AGBH), in violation of Mich. Comp. Laws § 750.84, assault with a dangerous weapon (felonious assault), in violation of Mich. Comp. Laws § 750.82, and the use of a firearm during commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On April 26, 2013, the court sentenced Petitioner to concurrent prison terms of 20 to 40 years for AWIM, 6 to 10 years for AGBH, and 1 to 4 years for felonious assault, all to be served consecutively to a sentence of 2 years for felony firearm.

On May 25, 2016, Petitioner filed his habeas corpus petition raising three issues. (Pet., ECF No. 1.)  Petitioner also filed a motion to stay these proceedings to permit him to exhaust additional issues in the state court through a motion for relief from judgment.  On September 16,

2016, the Court granted that relief.  (Order, ECF No. 12.)  Petitioner then pursued his remedies in the state courts.  On March 27, 2019, he filed an amended petition that included his newly exhausted issues.  (Am. Pet., ECF No. 19.)  The amended petition raises eight grounds for relief, as follows:

I.      Insufficient evidence to support assault with intent to murder and felonious assault.

II.     Mandatory minimum sentence was increased with judicial fact-finding in violation of Const. Am. VI.

III.    Prosecutorial misconduct.

IV.     Ineffective assistance of trial and appellate counsel.

V.      Improper jury instructions on elements.

VI.     Violation of 180-day speedy trial rule.

VII.    Warrantless arrest and denial of right to counsel at arraignment.

VIII.   Double jeopardy.

(Pet., ECF No. 19, PageID.264-265, 269-270, 273, 275, 277-278.)  Respondent has filed an answer to the petition (ECF No. 23) stating that the grounds should be denied because they are procedurally defaulted, non-cognizable, and/or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are not cognizable on habeas review or without merit. Accordingly, I recommend that the petition be denied.

## Discussion

## I.    Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

2

> This case arises from a shooting that occurred in Detroit, Michigan on July 13, 2012. The day before, on July 12, 2012, Daniel Torres assaulted a teenage girl when she attempted to prevent him from providing alcohol to her sister. She in turn told her brother, Wilson Gee, one of the victims in this case, about the incident, prompting Gee to fight Torres that evening.
>
> The following day, Gee heard that Torres had been walking by his house and making threats. Believing there would be another fight, Gee, accompanied by three or four friends, met Torres, defendant, and a third individual, known as "Little One," outside a nearby store. Gee and Torres had a verbal altercation, after which Gee's group walked away from the store. As the group walked away, Gee looked back and saw Torres pass a silver object to defendant. In comparison, one of the individuals in Gee's group, Enijah Lamb, stated that he saw a pistol on defendant's waist before the shooting began. In either case, someone in Gee's group yelled out that there was a gun, and they all began running. Gee saw defendant point the gun and fire several shots at the group. Others confirmed that defendant fired numerous shots. Gee, the only member of his group to be shot, was hit twice in the back.
>
> In a statement to police after his arrest, defendant acknowledged his presence at the scene of the shooting, but he denied firing any shots. He maintained that Torres gave him the gun, but that he passed it back to Torres and then ran away while Torres fired the gun at Gee's group.

(Mich. Ct. App. Op., ECF No. 24-16, PageID.1175-1176.) "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

Petitioner was tried with his co-defendant, Torres. They were tried by separate juries. Petitioner's jurors heard testimony from the victim's sister, the victim, two of the victim's friends, and one of the investigating officers. The jury deliberated for about one and one-half hours before returning the guilty verdicts.[1]

---

[1] Co-defendant Torres's jury found Torres guilty of felony firearm, but could not come to a unanimous decision on the other counts. *See* https://cmspublic.3rdcc.org/CaseDetail.aspx?CaseID=2177624 (visited May 4, 2020). Torres entered a plea of guilty to AWIM a couple of months later. He was sentenced to 5 to 15 years for AWIM, consecutive to a 2-years sentence for felony firearm. He was released on parole on February 13, 2020. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=841669 (visited May 4, 2020).

Petitioner, with the assistance of counsel, appealed his convictions and sentences, raising two issues, the same issues he raises in his amended petition as issues I and II.  By unpublished opinion issued September 16, 2014, the Michigan Court of Appeals denied relief and affirmed the trial court.

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising the same two issues plus a new claim of ineffective assistance of trial counsel.  The Supreme Court held Petitioner's application in abeyance pending its consideration of the same sentencing challenge raised in *People v. Lockridge*, No. 149073 (Mich.).  (Mich. Order, ECF No. 24-17, PageID.1235.)   After that case was decided, the supreme court remanded Petitioner's case to the trial court regarding sentencing, but denied the application in all other respects.  (Mich. Order, ECF No. 24-17, PageID.1234.)  On remand, the trial court affirmed its initial sentence.  (Wayne Cty. Cir. Ct. Register of Actions, ECF No. 24-1, PageID.527.)

Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.3.)  Instead, he filed his first petition in this Court.  The initial petition included three issues.  The first two issues were the two issues Petitioner had raised on direct appeal.  The third issue was a challenge to the trial court's refusal to resentence Petitioner on remand.

On July 26, 2016, Petitioner returned to the trial court to raise new challenges to his convictions and sentences by way of a motion for relief from judgment.  (Wayne Cty. Cir. Ct. Register of Actions, ECF No. 24-1, PageID.527.)  Petitioner raised six issues—the same issues he raises as habeas issues III -VIII in his amended petition.  The trial court denied relief, concluding

4

that Petitioner could have raised his new issues on direct appeal, had not done so, and had failed to show cause for that failure.  (Wayne Cty. Cir. Ct. Op.  and Order, ECF No. 24-14.)

Petitioner moved for reconsideration.  (Wayne Cty. Cir. Ct. Register of Actions, ECF No. 24-1, PageID.527.)  The trial court denied relief.  (Wayne Cty. Cir. Ct. Op.  and Order, ECF No. 24-15.)  Petitioner sought leave to appeal the trial court's decisions in the Michigan Court of Appeals and then the Michigan Supreme Court.  Those courts denied leave to appeal in orders entered July 18, 2017, (Mich. Ct. App. Order, ECF No. 24-18, PageID.1283), and February 4, 2019, (Mich. Order, ECF No. 24-19, PageID.1347), respectively.  Petitioner then returned to this Court and amended his petition to include all eight of the issues he had exhausted in the Michigan courts.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

6

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Sentencing (habeas issues II and V)

In his second habeas issue, Petitioner argues that the minimum sentence provided by Michigan's sentencing guidelines is mandatory and has the effect of increasing the penalties for his crimes. Facts that increase mandatory penalties must be found by a jury. In Petitioner's case, however, those facts were found by the judge thereby violating Petitioner's Sixth Amendment right to trial by jury. As part of his fifth habeas issue, Petitioner argues further that the jury should have been instructed with regard to the facts that would increase his penalties. [2]

---

[2] Respondent argues that Petitioner has procedurally defaulted issues III-VIII, including the jury instructions claim. "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010). Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999). The undersigned will forego

Petitioner bases his argument on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).   In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.   The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt."  *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined its conclusion with regard to the state sentencing guideline scheme in *Blakely* would also apply to the federal sentencing guidelines.  One group of five justices concluded that the federal sentencing guidelines ran afoul of the Sixth Amendment.  Another group of five justices determined the appropriate remedy was to make the guidelines discretionary.

---

the procedural default analysis because resolving the procedural default claims raises more questions than simply resolving Petitioner's claims on the merits.

Subsequently, in *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held that the *Blakely* line of cases applied equally to mandatory minimum sentences.  Petitioner was sentenced three months before *Alleyne*.

At the time Petitioner's case was before the Michigan Court of Appeals, however, the court of appeals had already concluded that *Alleyne* only prohibited judicial factfinding used to determine a mandatory minimum sentence; it had no impact on judicial factfinding in scoring the sentencing guidelines producing a minimum range for an indeterminate sentence, the maximum of which is set by law.  *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. App.  2013).  The Sixth Circuit also suggested that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment and, as a consequence, the question was not a matter of clearly established Supreme Court precedent.  *Kittka v. Franks*, 539 F.  App'x 668, 673 (6th Cir. 2013); *see also Saccoccia v. Farley*, 573 F.  App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory statutory minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .").[3]

Shortly before the court of appeals rejected Petitioner's *Alleyne* challenge, the Michigan Supreme Court granted leave to appeal on an application that raised the *Alleyne* issue.  *People v. Lockridge*, 846 N.W.2d 925 (Mich. 2014).   The supreme court held Petitioner's application for leave in abeyance pending its decision in *Lockridge*.  When the Michigan Supreme Court issued its decision three months later, the court decided the *Herron* decision was wrong,

---

[3] The Sixth Circuit has since clarified that "Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018).

reasoning that, because the "guidelines require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*. *People v. Lockridge*, 870 N.W.2d 502, 506 (Mich. 2015) (emphasis in original). As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional. The Court's remedy, consistent with *Booker*, was to make the guidelines advisory only. *Id*. at 520-21.

The Michigan Supreme Court made its holding in *Lockridge* applicable to cases still "pending on direct review." *Id*. at 523. Petitioner's case was still pending on direct review at the time the *Lockridge* court reached its decision.

The *Lockridge* court identified a limited group of defendants that might demonstrate the potential for plain error sufficient to warrant a remand to the trial court: "defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure . . . ." *Id*. at 522 (footnote omitted). If a remand were appropriate, the supreme court called upon the trial court, on remand, to determine if it "would have imposed a materially different sentence but for the unconstitutional restraint . . . ." *Id*. at 524.

The Michigan Supreme Court applied *Lockridge* in Petitioner's case, remanding the case to the trial court. (Mich. Order, ECF No. 24-17, PageID.1234.) On remand, the trial court concluded that, even free of the unconstitutional restraint of mandatory minimum sentencing guidelines, it would not have imposed a materially different sentence and, indeed, reaffirmed Petitioner's sentence under the discretionary guidelines. (Wayne Cty. Cir. Ct. Register of Actions,

ECF No. 24-1, PageID.527.)  Any Sixth Amendment problem created by *mandatory* sentencing guidelines at Petitioner's initial sentencing hearing was corrected on remand.  There can be no Sixth Amendment issue when a judge relies upon facts she found, instead of facts found by the jury, when exercising sentencing discretion.  Moreover, there is no need to instruct the jury regarding facts relevant only to the judge's exercise of discretion when sentencing. Accordingly, Petitioner is not entitled to habeas relief on his *Alleyne* claim.

**IV.    Sufficiency, jury instructions, and double jeopardy (habeas issues I, V, and VIII)**

Petitioner challenges the jury's verdict that he was guilty of AWIM *and* felonious assault by claiming that the evidence was insufficient, the jury instructions were improper, and his double jeopardy rights were violated.  Petitioner contends there was no evidence of his intent to kill, that the court improperly instructed the jury that use of a weapon supports an inference of an intent to kill, and that the court improperly instructed the jury that AWIM requires the intent to put a person in fear of being murdered or the intent to murder.  Petitioner also contends that there is a fundamental inconsistency in the jury's determination the Petitioner intended to kill victim Gee and committed felonious assault against victim Gee.  And, finally, Petitioner contends that the convictions for AWIM and felonious assault violate the constitutional protection against double jeopardy.

**A.    Jury instructions regarding intent**

Petitioner's arguments regarding the flaws in the jury instructions have evolved to include more than a dozen points.  (Pet'r's Mot. for Relief from J., ECF No. 15-1, PageID.187-193; Pet'r's Br. in Support of Appl. for Leave to Appeal, ECF No. 15-1, PageID.158-165, 233-

11

241.)  The undersigned will address only those arguments that fall within the scope of his presentation of the issue in the amended petition.  (Am. Pet., ECF No. 19, PageID.273-275.)

Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review.  Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process.  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law.  *Id.*

Petitioner utterly fails to meet his burden of showing that the instructions were so unfair as to deprive him of due process.  Indeed, Petitioner's claims of instructional error are wholly unfounded.  Petitioner's claim that the instructions were in error because they included a statement "that the use of a weapon is natural to take a life," (Am. Pet.  ECF No. 19, PageID.273), is meritless because the trial court never gave such an instruction.  (Trial Tr.  IV, ECF No. 24-12, PageID.1125-1144.)  Petitioner's claim that the trial court instructed the jury that "the intent for AWIM constituted the intent either to put the person in fear of being murdered or the intent to murder," (Am. Pet., ECF No. 19, PageID.273), is meritless because the trial court never gave such an instruction.  (Trial Tr.  IV, ECF No. 24-12, PageID.1125-1144.)  Plaintiff's remaining jury instruction claim—that the trial court failed to instruct the jury regarding facts necessary to score mandatory sentencing guidelines—was rendered moot by the court's determination that

Petitioner's sentence would remain the same if he were sentenced under a post-*Lockridge* discretionary minimum sentencing regime.

Because Petitioner fails to even show error in the instructions—much less that the instructions caused his trial to be fundamentally unfair—he is not entitled to habeas relief on his jury instruction challenges.

### B.    Sufficiency of the intent evidence

Petitioner next complains that the prosecutor never presented evidence regarding Petitioner's intent to kill. The Michigan Court of Appeals addressed Petitioner's claim applying the following standard:

> We review a challenge to the sufficiency of the evidence de novo. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). This Court analyzes whether the evidence, viewed in a light most favorable to the prosecution, could allow a rational trier of fact to determine that the essential elements of the crime charged were proved beyond a reasonable doubt. *Id.* We resolve any conflicts in the evidence in favor of the prosecution. *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

(Mich. Ct. App. Op., ECF No. 24-6, PageID.1176.)

Although the court of appeals relied on state authority, the standard it applied is functionally identical to the federal habeas standard. A § 2254 challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979). The habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw

13

reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).  The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The court of appeals applied the standard exactly as *Jackson* directs; it viewed the evidence in a light that favors the prosecutor against the elements of the offense:

> AWIM is a specific intent crime, the elements of which are: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005).  The intent to kill may be inferred from any facts in evidence, including the defendant's conduct and injuries suffered by the victim.  See *People v Ericksen*, 288 Mich App 192, 196-197; 793 NW2d 120 (2010).  Given the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to prove intent.  *Id.* at 197.

14

> In this case, the prosecution clearly presented sufficient evidence to establish that defendant possessed the actual intent to kill Gee.  In the moments before the shooting, defendant was outside the store with Torres, during Torres's verbal confrontation with Gee.  Defendant either accepted a gun from Torres, or brought a gun to the scene.  Then, as Gee's group walked away, defendant fired several shots at Gee and his group, hitting Gee twice.  Defendant's intent could be inferred from his conduct, specifically evidence that he used a lethal weapon to fire numerous gunshots into Gee's group, and in fact succeeded in shooting Gee twice in the back.  Such evidence clearly demonstrated that defendant acted with the requisite actual intent to kill.

(Mich. Ct. App. Op., ECF No. 24-16, PageID.1176.)

Petitioner does not dispute that the record includes the evidence that the court of appeals found to be sufficient.  Petitioner simply disagrees that the evidence supports the inference that he intended to kill Gee.

Certainly, much of the evidence was circumstantial.  However, the Supreme Court has "never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."  *Desert Palace, Inc.  v. Costa*, 539 U.S. 90, 100 (2003).  "And juries are routinely instructed that '[t]he law makes no distinction between the weight or value to be given to either direct or circumstantial evidence.'"  *Id.*  (alteration in original) (quoting 1A Kevin F. O'Malley, Jay E. Grenig & William C. Lee, *Federal Jury Practice and Instructions: Criminal* § 12.04 (5th ed. 2000)).

The court of appeals, considering the entire record, held that the identified facts supported the reasonable inference that Petitioner intended to kill Gee.  The jury would be free to draw that inference, so long as that inference is a reasonable one.  In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'"  *Id*.  at 655.  The Court described a reasonable inference as an inference that a rational jury could make from the facts.  The inference need not be

15

compelled by those facts; it must simply be rational.  *Id*.  at 656.  As a result, to succeed in his challenge, Petitioner must show that the inference identified by the court of appeals is irrational.

Petitioner has not made that showing.  The inference singled out by the court of appeals—that Petitioner intended to kill Gee when, after an "altercation" with Gee, he pulled out a gun and fired multiple shots in Gee's direction as Gee fled—could rationally flow from the totality of the underlying facts.  His argument that other inferences might follow from the evidence—inferences that favor him—is immaterial.  Petitioner has not identified any United States Supreme Court case that resolves the issue differently on a set of materially indistinguishable facts.  Moreover, he has failed to overcome the double deference owed to the state-court's application of the facts to the *Jackson* standard on habeas review.  *Tucker*, 541 F.3d at 656.  Accordingly, Petitioner is not entitled to habeas relief on his sufficiency-of-the-evidence claim regarding his intent to kill.

### C.    Inconsistent verdicts

Petitioner also challenged the sufficiency of the evidence regarding his felonious assault conviction.[4]  The court of appeals reviewed the elements of that offense:

> In regard to defendant's felonious assault conviction, pursuant to MCL 750.82(1), "a person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder" is guilty of felonious assault.  "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery."  *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

---

[4] Petitioner might also have claimed that his AWIM conviction for shooting at Gee was inconsistent with his AGBH conviction for firing the same shots in the direction of Lamb.  But, that inconsistency is no more troubling than the felonious assault inconsistency raised on appeal and in his petition.

(Mich. Ct. App. Op., ECF No. 24-16, PageID.1176-1177.)  The court recognized that Petitioner did not contest that the same circumstantial evidence discussed above with regard to the AWIM conviction would be sufficient to show felonious assault.  Petitioner, the court concluded, was not so much challenging the sufficiency of the evidence as he was highlighting the logical inconsistency between a guilty verdict on the AWIM charge—which required finding an intent to kill—and a guilty verdict on the felonious assault charge—which, by statutory definition, involves the absence of an intent to murder or inflict great bodily harm.  (*Id*.)

The court of appeals rejected Petitioner's challenge because "juries are not required to return consistent verdicts."  (*Id*., PageID.1177.)  Moreover, the testimony of the witnesses certainly did not foreclose the possibility that Petitioner might have had one intent when he brandished the weapon and a different intent when he pulled the trigger.  Nonetheless, even if the verdicts were inconsistent, Petitioner cannot show that the court of appeals acceptance of such inconsistent verdicts is contrary to clearly established federal law because the Supreme Court has concluded that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside." *Harris v. Rivera*, 454 U.S. 339, 345 (1981).

## D.    Double jeopardy

Finally, Petitioner suggests that his convictions for felonious assault and AWIM violated the protections of the Double Jeopardy Clause.  The court of appeals again disagreed:

> [C]ontrary to defendant's arguments, convictions for both felonious assault and AWIM do not violate double jeopardy.  In particular, prohibitions against double jeopardy ensure that no person will "be subject for the same offense to be twice put in jeopardy . . . ." US Const Am V; Const 1963, art 1, § 15.  This includes protection against multiple punishments for the same offense. *People v Smith*, 478 Mich 292, 299; 733 NW2d 351 (2007).  Where our Legislature has not clearly expressed its intention to authorize multiple punishments for the same conduct, Michigan Courts apply the "same elements" test to determine whether multiple punishments are

17

permitted.  *Id*.  at 316.  Under that test, offenses are analyzed to determine if each offense requires proof of a fact that the other offense does not.  *Id*. at 302-304, 318-319.

Felonious assault requires the use of a dangerous weapon and an intent to injure or place the victim in reasonable apprehension of an immediate battery, neither of which are required for AWIM; in contrast, AWIM involves an actual intent to kill, which is not required for felonious assault.  See *Brown*, 267 Mich App at 147; Avant, 235 Mich App at 505.  Because AWIM and felonious assault each require proof of an element that the other does not, defendant's convictions for both AWIM and felonious assault do not violate double jeopardy protections against multiple punishments and his double jeopardy argument must fail.  See *Smith*, 478 Mich at 304, 319.

(Mich. Ct. App. Op., ECF No. 24-16, PageID.1177-1178.)

The court of appeals' resolution of this issue is entirely consistent with clearly established federal law.  The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  This clause provides three separate guarantees: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense.  *See United States v. Dixon*, 509 U.S. 688, 696 (1993); *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

In this context, the United States Supreme Court has traditionally applied the "same-elements" test first enunciated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See Rutledge v. United States*, 517 U.S. 292, 297 (1996).  The "*Blockburger* test," inquires whether each offense contains an element not contained in the other.  If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which

the other does not." *Blockburger*, 284 U.S. at 304.  If not, they are the "same offense" and double jeopardy bars additional punishment. *See Brown v. Ohio*, 432 U.S. 161, 168-69 (1977).  If the *Blockburger* test is satisfied, however, it is presumed that the legislature intended to punish the defendant under both statutes and there is no double jeopardy bar to multiple punishments. *Whalen v. United States*, 445 U.S. 684, 691-92 (1980).

The Michigan Court of Appeals found Petitioner was not subject to double jeopardy because the felonious assault charge required proof of an element that was not contained in the AWIM charge, namely that the assault occurred with a dangerous weapon.  The court of appeals further found that the AWIM charge required an intent requirement that the felonious assault charge did not.

It is the prerogative of the state to define the elements of the crime.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses.  Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

Because Petitioner cannot show that the state court's application of the "same elements" test to the elements of AWIM and felonious assault is contrary to, or an unreasonable

application of, clearly established federal law, he is not entitled to habeas relief on his double jeopardy claim.

## V.    Prosecutorial misconduct (habeas issue III)

Petitioner next claims that his trial was rendered unfair by prosecutorial misconduct.  Petitioner insists that the prosecutor argued that the victim was shot two times, almost died, went to a hospital, and spoke to a doctor; yet, according to Petitioner, there was no evidence to support that argument.

Petitioner is entitled to habeas relief on the basis of prosecutorial misconduct if he demonstrates that the prosecutor's allegedly improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).   In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id.*  at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

A prosecutor is not limited to simply recounting the evidence during closing argument.  He may also argue reasonable inferences from the evidence.  *Byrd v. Collins*, 209 F.3d

486, 535 (6th Cir. 2000); *see also Young*, 470 U.S. at 8 n.5 (Court acknowledged as a useful guideline the American Bar Association Standard:  "The prosecutor may argue all reasonable inferences from the evidence.").  Nonetheless, it is unquestionably improper for a prosecutor to argue facts not in evidence.  *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004) (citing *Berger*, 295 U.S. at 78).

Review of the record indicates that the prosecutor was, for the most part, simply recounting the evidence in her closing argument.  Victim Gee testified that he was shot twice, went to a hospital, had surgery, and stayed there for a week.  The only point where the prosecutor took her argument beyond those well-grounded facts was when she said: "He almost died."  (Trial Tr. IV, ECF No. 24-12, PageID.1110.)  That may have been an inferential leap from the victim's description of his injuries, but it is not an irrational one.  As noted above, in *Coleman*, 566 U.S. at 655, the Court described a reasonable inference as an inference that could rationally be made from the facts.  Certainly, the inference that a person "almost died" after he was shot twice in the back, underwent surgery, and was hospitalized for a week, does not appear to be irrational on its face.

Even if the inference urged by the prosecutor stretched the bounds of reason, it was certainly isolated.  And, it was followed by the trial court's instruction regarding what is and what is not evidence:

> The lawyers' statements and arguments, and any commentary, are not evidence. They are only meant to help you understand the evidence, and each side's legal theories.
>
> You should only accept the things the lawyers say that are supported by the evidence, or by your own common sense and general knowledge.

(Trial Tr.  IV, ECF No. 24-12, PageID.1127-1128.)  This Court presumes that jurors follow their instructions.  *See, e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Accordingly, under the

21

circumstances that Petitioner describes, the undersigned concludes that the prosecutor's isolated comment, if improper, was cured by the trial court's instruction and did not infect the trial with unfairness.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## VI.    Speedy trial (habeas issue VI)

Petitioner next complains that his pretrial detention from July of 2012 until his trial started on April 8, 2013, violated the 180-day speedy trial rule.  In the Michigan state courts, the right to a speedy trial is guaranteed by the United States constitution, U.S. Const. amend VI; the Michigan constitution, Mich. Const. 1963 art.1, § 20; state statute, Mich. Comp. Laws § 768.1; and court rule, Mich. Ct. R. 6.004(D).  *People v. Cain*, 605 N.W.2d 28, 111 (Mich. Ct. App. 1999); *People v. McLaughlin*, 672 N.W.2d 860, 867 (Mich. Ct. App. 2003).

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  In raising his claim, Petitioner clearly invokes the protections of the state constitution, state statutes, and the state court rules.  None of those claims is cognizable on habeas review.

Although Petitioner relies principally on the state court protections afforded to speedy trial rights, he makes passing reference to that right as it is guaranteed by the federal

22

constitution.[5]  The Sixth Amendment to the U. S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."  The right to a speedy trial attaches when the accused is arrested or formally accused, *see United States v. Marion*, 404 U.S. 307, 320-21 (1971), and terminates upon conviction, *Betterman v. Montana*, 578 U.S. ___, 136 S. Ct. 1609, 1612 (2016).

The purpose of the speedy-trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished.  *Doggett v. United States*, 505 U.S. 647, 654 (1992); *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986); *United States v. MacDonald*, 456 U.S. 1, 7-8 (1982); *Barker v. Wingo*, 407 U.S. 514, 532-33 (1972); *United States v. Marion*, 404 U.S. 307, 320 (1971); *United States v. Ewell*, 383 U.S. 116, 120 (1966).  The sole remedy for a violation of the speedy-trial right is dismissal of the charges.  *See Strunk v. United States*, 412 U.S. 434, 439-40 (1973); *United States v. Brown*, 169 F.3d 344, 348 (6th Cir.1999).

In *Barker*, the Supreme Court established a four-factor test for determining whether a defendant has been denied the constitutionally guaranteed right to a speedy trial.  *Barker* held that a court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant.  *Barker*, 407 U.S. at 530.

Petitioner was arrested during July of 2012.  His trial commenced on April 8, 2013. The delay between Petitioner's arrest and his trial was between 8 and 9 months.  "[A] delay is presumptively prejudicial when it approaches one year."  *United States v. Gardner*, 488 F. 3d 700,

---

[5] Petitioner cites *Maples v. Stegall*, 427 F.3d 1020 (2000), which includes a federal constitutional speedy trial analysis, and Petitioner also makes reference to the Sixth Amendment in a string cite of possible speedy trial protections. (Pet'r's Mot. for Relief from J., ECF No. 15-1, PageID.195-196.)

719 (6th Cir. 2007).   Delays of less than a year, on the other hand, might be so ordinary that they do not even trigger analysis of the other factors.  *Doggett*, 505 U.S. at 651-652.  Indeed, the Sixth Circuit has suggested that a "ten-month delay . . . is likely right at the line to trigger an analysis of the remaining factors."  *Brown*, 498 F.3d at 530.  The Sixth Circuit specifically found a nine-month delay was not presumptively prejudicial when the case involved multiple defendants; and "if there is no delay that is presumptively prejudicial, there is no necessity for inquiry into the other factors." *Gardner*, 488 F.3d at 719.

Petitioner's case involved multiple defendants and that was the reason it was delayed.  Petitioner's case was initially set for trial during November of 2012, but the counsel of Petitioner's co-defendant and the prosecutor had a multi-week trial that conflicted with that date.[6] (Pretrial Conf. Tr., ECF No. 24-6, PageID.654-656; Pretrial Conf. Tr., ECF No. 24-7, PageID.664- 668.)  When the parties met in November 2012 to reschedule, they settled on the April 8 trial date as the first date when the court, the prosecutor, and both defense counsel were available.  (*Id.*)  The delay was not attributable to Petitioner.   Nonetheless, Petitioner never asserted his speedy trial rights until the first day of trial.  (Wayne Cty. Cir. Ct. Register of Actions, ECF No. 24-1; Trial Tr. I, ECF No 24-9, PageID.857-860.)  Once Petitioner raised the issue, the trial court concluded that there was good cause for the delay.  (Trial Tr. II, ECF No. 24-10, PageID.866-868.)

With respect to the three specific categories of harm that might accrue to a pretrial detainee because of undue delay in proceeding with trial: "(i) . . . oppressive pretrial incarceration; (ii) . . . anxiety and concern of the accused; and (iii) . . . the defense [could] be impaired[,]" *Barker*,

---

[6] The trial lasted almost three months.  (Trial Tr. I, ECF No. 24-9, PageID.858-859.)

407 U.S. at 532 (footnote omitted), Petitioner has not identified any particular prejudice—other than the obvious prejudice of being in jail while charges were pending.  The undersigned concludes that under the circumstances presented here, Petitioner's stay in detention did not amount to "oppressive pretrial incarceration."  Moreover, there is no suggestion that Petitioner suffered undue anxiety or concern or that his defense was impaired by the delay.

Petitioner's pretrial detention did not violate his speedy trial rights.  It was not long enough to be presumptively prejudicial.  Moreover, even if the delay were presumptively prejudicial, the balance of the other *Barker* factors does not warrant relief.

### VII.    Warrantless arrest and absence of counsel (habeas issue VII)

Petitioner alleges that his arrest was invalid.  Petitioner's assertion does not provide any basis for habeas corpus relief.  *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (illegal arrest or detention does not void a subsequent conviction).  The method by which petitioner's presence was procured at trial does not provide a basis for invalidating his criminal conviction.  *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); *Frisbee v. Collins*, 342 U.S. 519, 522 (1952); *Ker v. Illinios*, 119 U.S. 436, 444 (1886); *Browning v. Jabe*, No. 88-1307, 1990 WL 6943, at * 1 (6th Cir. Feb. 1, 1990) ("petitioner's arguments that his arrest was absent probable cause . . . [are] irrelevant, as an unlawful arrest is not a defense to a valid conviction.") (*citing United States v. Crews*, 445 U.S. 463, 474 (1980)).

Petitioner also alleges that his Sixth Amendment right to counsel was violated when he was arraigned in district court without counsel.  The Sixth Amendment to the United States

Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. The Sixth Amendment right to counsel does not attach until a prosecution is commenced, that is until the initiation of adversary criminal proceedings by a formal charge, a preliminary hearing, an indictment, an information or an arraignment. *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). "It is only at that time 'that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'" *United States v. Gouveia*, 467 U.S. 180, 189 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). Once the right to counsel attaches, "the Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009).

Although the right to counsel may attach at arraignment, that does not mean that "arraignment itself is a critical stage requiring the presence of counsel." *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 212 (2008) (citing *Michigan v. Jackson*, 475 U.S. 625, 630, n.3 (1986)). By way of example, in *Hamilton v. Alabama*, 368 U.S. 52 (1961), the Supreme Court concluded that arraignment in Alabama was a "critical stage" because if a criminal defendant failed to raise certain defenses at that stage, the defenses were waived. The *Hamilton* Court acknowledged, however, that "[a]rraignment has differing consequences in the various jurisdictions . . . ." *Id.* at n. 4. In *Lundberg v. Buchkoe*, 389 F.2d 154 (6th Cir. 1968), the Sixth Circuit concluded that arraignment in Michigan is not a critical stage of the criminal proceeding:

26

In Michigan the 'preliminary examination has for its limited purpose only the determination by a magistrate whether there is probable cause to bind the defendant over for trial . . . .' *People v. Zaleski*, 133 N.W.2d 175 (1965); *See People v. Podolski*, 518, 52 N.W.2d 201, *cert. denied*, 344 U.S. 845 (1952). In light of the above principles, it cannot be said that Michigan's arraignment and preliminary examination proceedings, in and of themselves, constitute a critical stage of the proceedings. Nor were there any special circumstances in appellant's case which might suggest that the proceedings were critical; no plea or statement was in fact obtained from appellant at his arraignment and, aside from his right not to be held in custody absent probable cause, appellant neither lost nor waived any right or defense. The fact that appellant might have received some collateral benefit in the form of pretrial discovery had he not waived examination is immaterial. *See Wilson v. Harris, supra*; *United States ex rel. Cooper v. Reincke*, 333 F.2d 608 (2nd Cir.), *cert. denied*, 379 U.S. 909 (1964). Appellant's claim that his conviction is invalid because of the denial of the assistance of counsel at his arraignment proceedings is thus rejected.

*Id.* at p. 158 (parallel citations omitted).

A review of the register of actions from Petitioner's district court proceedings, *see* https://dapps.36thdistrictcourt.org/ROAWEBINQ/ROACase.aspx (visited May 6, 2020), Petitioner's arraignment compels the same result here. The arraignment was not a "critical stage." The judge simply read the charges, informed Petitioner of his rights, informed him of the date and time for his preliminary examination, set bond, and acknowledged that Petitioner, without counsel, stood mute in response to the charges. Petitioner does not contend that witnesses testified, that exhibits were introduced, that he made a plea or statement, and that he lost any right or defense. Counsel appeared at the preliminary examination a few days later. (Prelim. Exam. Hr'g Tr., ECF No. 24-2.) Petitioner has not alleged, and cannot allege, harm that accrued to him because he did not have counsel at the arraignment. Petitioner's "right to counsel" claim, therefore, has no merit.

## VIII.  Ineffective assistance of trial counsel (habeas issue IV)

Petitioner contends his trial counsel rendered constitutionally ineffective assistance by failing to request a jury instruction, failing to object to prosecutorial misconduct, failing to

27

pursue a speedy trial motion, failing to conduct pretrial investigation—specifically, failing to determine "where or if the defendant was shot" through medical testimony—and by failing to object to a biased juror.  (Mot. for Recons., ECF No. 11, PageID.46-49; Pet'r's Appl. for Leave to Appeal, ECF No. 19, PageID.327-335; Pet'r's Appl. for Leave to Appeal, ECF No. 24-19, PageID.1355-1358.)  For the most part, Petitioner's arguments consist of quoting or citing cases where the court identified conduct that rose to the level of ineffective assistance and then attempting to shoehorn his attorney's conduct into the confines of the conduct the court found unacceptable.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Many of Petitioner's claims that his trial counsel rendered ineffective assistance are foreclosed for the reasons stated above.  Petitioner cannot show that he was prejudiced by the prosecutorial misconduct that he identifies, *see* § V above, because most of the argument he finds objectionable was fair comment on the evidence and, to the extent the prosecutor's claim that the victim might have died was not fair comment, any prejudice was cured by the trial court's instruction regarding the evidentiary value of counsel's argument.  Moreover, Petitioner cannot show that he was prejudiced by counsel's failure to raise the "speedy trial" issue because Petitioner raised it and the trial court rejected it.  *See* § VI, above.

Petitioner's claim regarding the biased juror warrants further scrutiny.  The right to an impartial jury is applicable to the states via the Fourteenth Amendment.  *See Turner v. Louisiana*, 379 U.S. 466, 471-72 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  Further, "due process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment."  *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations omitted).  "The *voir dire* is designed "'to protect [this] right by exposing possible biases, both known and unknown, on the part of potential jurors.'"  *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984)). The question of bias of an individual juror at a state criminal trial is one of fact.  *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (citing *Patton v. Yount,* 467 U.S. 1025, 1036 (1984)); *see also Sizemore v. Fletcher,* 921 F.2d 667, 672-73 (6th Cir. 1990) (citing *Smith v. Phillips*, 455 U.S. 209, 218 (1982)).  When a juror's impartiality is called into question, the relevant issue is "'did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence,

and should the juror's protestation of impartiality be believed.'" *Dennis*, 354 F.3d at 520 (quoting *Patton*, 467 U.S. at 1036).

Petitioner has not supported his juror bias claim with any facts. He makes no reference to the record, he simply claims there was a biased juror. It is impossible to identify the supposedly biased juror, much less whether or not that juror made a credible claim that he or she could be impartial. Therefore, Petitioner has failed to carry his burden that counsel's failure to excuse the juror was professionally unreasonable or that Petitioner suffered prejudice as a result.

Petitioner's claim that counsel failed to conduct an adequate pretrial investigation is likewise unsupported. Petitioner claims that counsel should have pursued victim Gee's medical records. Petitioner suggests that the medical records might show that Gee was not shot or show that Gee's wounds were not life-threatening. Petitioner claim is entirely speculative. A court "cannot conclude that [] counsel was deficient solely on [the petitioner's] version." *See Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016) (holding that "sheer speculation" of inadequate investigation does not state a claim). "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting *Strickland*, 466 U.S. at 689). Therefore, Petitioner has not established that his counsel's failure to obtain Gee's medical records was objectively unreasonable or resulted in prejudice.

Petitioner twice argued to the trial court that he wanted new counsel. (Pretrial Hr'g Tr., ECF No. 24-8; Trial Tr. II, ECF No. 24-10, PageID.866-876.) Petitioner argued first that counsel had failed to communicate with Petitioner's proposed witnesses. (Pretrial Hr'g Tr., ECF No. 24-8, PageID.674-677.) But, Petitioner had never provided counsel with the contact information. (*Id*.) When Petitioner provided contact information, counsel spoke with his proposed

witnesses.  (Trial Tr. II, ECF No. 24-10, PageID.871.)  That effort, however, did not apparently yield a viable defense.  Petitioner does not suggest otherwise.

Petitioner suggests generally that counsel would not do what Petitioner wanted counsel to do.  The only concrete example, however, was counsel's failure to file a speedy trial motion, which counsel filed on Petitioner's behalf, to no avail.  Petitioner does not identify any defense that counsel failed to present nor does Petitioner state what counsel's more in-depth investigation might have found.  Petitioner's counsel faced a difficult task.  Petitioner had made a statement to the police that put him at the scene with the gun in his hand; he simply claimed he was not the shooter—that he had passed the gun to his co-defendant.  The other witnesses testified otherwise.  Under those circumstances, the record does not support Petitioner's claims that his counsel was professionally unreasonable or that Petitioner suffered prejudice as a result.  Accordingly, Petitioner is not entitled to habeas relief on his claim that trial counsel rendered ineffective assistance.

## IX.    Ineffective assistance of appellate counsel (habeas issue IV)

Petitioner claims that appellate counsel rendered ineffective assistance because he failed to raise all of the issues that Petitioner eventually raised in his motion for relief from judgment.  The trial court rejected Petitioner's claim:

> Defendant argues good cause exists for his failure to raise his arguments on appeal because he was denied the effective assistance of appellate counsel.  Pursuant to *Strickland v Washington*, 466 US 668, 694; 104 SCt 2052; 80 L Ed 2d 674 (1984), ". . . counsel is presumed effective, and the defendant has the burden to show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel s error."  *People v. Frazier*, 478 Mich 231, 242; 733 NW2d 713 (2007).  Moreover, "the test for ineffective assistance of appellate counsel is the same as that applicable to a claim of ineffective assistance of trial counsel."  *People v. Uphaus*, 278 Mich App 174, 186; 748 NW2d 899 (2008), citing *People v. Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002). The *Strickland* test presumes that counsel is effective to "eliminate the distorting effects of hindsight."  *Strickland, supra* at 689.  In the interest of fairness, there is a strong

31

presumption that counsel's action or inaction "might be considered sound trial strategy." *Id.*

Defendant insists appellate counsel was ineffective because his performance failed to raise the issues he brings before the Court in his motion for relief from judgment. However, counsel is not required to raise each and every possible issue on appeal. Indeed, it may be an effective appellate strategy to only focus on one issue. "Appellate counsel may legitimately winnow out weaker arguments in order to focus on those arguments that are more likely to prevail." *Uphaus, supra*, at 187, citing *People v. Reed*, 449 Mich 375, 391; 535 NW2d 496 (1995). Here, appellate counsel raised three separate issues in defendant's claim of appeal, one of which resulted in the matter being reversed and remanded for resentencing. A particular strategy does not constitute ineffective assistance of counsel simply because it does not work. *People v. Matuszak*, 263 Mich App 42, 61, 687 NW2d 342 (2004). Since defendant does not analyze or describe how his appellate counsel's actions fell below an objective standard of reasonableness, it follows that he has not shown he was prejudiced by the attorney's actions.

(Wayne Cty. Cir. Ct. Op. and Order, ECF No. 24-14, PageID.1169-1170.)

The trial court's analysis is entirely consistent with the federal law clearly established in *Strickland*. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

The Sixth Circuit has held that "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting

*Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  *See also Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

For all of the reasons stated above, the issues Petitioner raised in his motion for relief from judgment lacked merit.  Accordingly, appellate counsel's failure to raise those issues was neither professionally unreasonable nor prejudicial and Petitioner has failed to show that the state court's rejection of his ineffective assistance of appellate counsel claim was contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C.  § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C.  § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:    June 16, 2020                                   /s/ *Maarten Vermaat*
                                                          Maarten Vermaat
                                                          United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).